REQUESTED BY: M. Berri Balka State Tax Commissioner
You have requested our opinion concerning whether Nebraska's cigarette tax may be imposed on cigarettes manufactured by the Omaha Tribe of Nebraska and sold by the Tribe on its reservation in Nebraska.
I. FACTS
A. The Omaha Tribe's Cigarette Manufacturing Plant.
The Omaha Tribe of Nebraska [the "Tribe"] is a federally recognized Indian Tribe organized pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 476, under a Constitution and Bylaws ratified by the members of the Tribe on February 15, 1936, and approved by the Secretary of the Interior on March 30, 1936. The Tribe occupies reservation land in Nebraska and Iowa constituting the Omaha Indian Reservation [the "Reservation"].
The Tribe, doing business as the "Omaha Nation Tobacco Company," has established a facility to manufacture cigarettes within the boundaries of the Tribe's Reservation. The manufacturing facility is located on land in Nebraska held in trust by the United States for the benefit of the Tribe. The Tribe reportedly spent $900,000 to initiate the cigarette manufacturing operation. It has been reported that the Tribe brought in an outside consultant to establish the plant, and that, at least initially, some of the plant employees were nonmembers of the Tribe. The Tribe does, however, intend to staff the operation with tribal members. The Tribe has applied for and obtained a federal license to operate as a manufacturer of tobacco products, as well as a Nebraska wholesaler's license. The Tribe is engaged in on-Reservation sales of its cigarettes to both members and nonmembers of the Tribe.
B. Nebraska's Cigarette Tax.
Nebraska imposes an excise tax of thirty-four (34) cents on each package of cigarettes sold in the State. Neb. Rev. Stat. § 77-2602(1) (1996). Cigarette wholesalers are required to stamp cigarettes sold to retailers in the State, and to collect and pay the cigarette tax to the Tax Commissioner. Neb. Rev. Stat. §§ 77-2603 and 77-2602(1) (1996). Neb. Rev. Stat. §77-2602.01 (1996) provides: "The impact of the [cigarette] tax . . . is hereby declared to be on the vendee, consumer, or possessor of cigarettes in this state, and when such tax is paid by any other person, such payment shall be construed as an advance payment, and shall thereafter be added to the price of the cigarettes and recovered from the ultimate consumer or user." Proceeds from the cigarette tax are dedicated to several purposes. Twenty-one (21) cents of the tax on each package of cigarettes is deposited in the General Fund. Neb. Rev. Stat. § 77-2602(1) (1996). Varying amounts of the tax are deposited in other funds, including: the Nebraska Outdoor Recreation Development Cash Fund; the Department of Health and Human Services Finance and Support Cash Fund; the University Facilities Fund; the State College Facility Fund; the City of Omaha Public Events Facilities Fund; the Secure Youth Confinement Facility Fund; the Building Renewal Allocation Fund, the Nebraska Capital Construction Fund, and the Municipal Infrastructure Redevelopment Fund. Neb. Rev. Stat. § 77-2602(1)(a) to (h).
Since 1976, the Department has required all cigarette wholesalers to stamp all packages of cigarettes sold to retailers located on reservations in Nebraska. The retailer can then sell the stamped cigarettes to Indians tax-free provided the retailer distinguishes on his or her records the exempt cigarette sales from the nonexempt cigarette sales. Since the retailer has already paid the cigarette tax to the wholesaler, the retailer can issue to the cigarette wholesaler a Nebraska Credit Computation for Cigarettes and Tobacco Products Sold to Native American Reservation Indians, Form 68. The wholesaler then credits the retailer's account for the amount of credit claimed on Form 68. The wholesaler attaches Form 68 to their next purchase order for cigarette stamps and is allowed a credit for the amount of cigarette tax allowed the retailer.
III. QUESTIONS PRESENTED
You have asked us to address three questions:
1. May the Tribe be required to affix Nebraska cigarette tax stamps on each package of cigarettes sold on the Reservation in Nebraska?
2. If the Tribe may be required to affix cigarette tax stamps to packages of cigarettes, is the Department required to allow the Tribe to obtain stamps for cigarettes sold to non-tribal members on the Reservation without prepayment of cigarette tax, or may the Department continue to follow its present procedure as outlined above?
3. If the Tribe may be required to affix cigarette tax stamps to packages of cigarettes, what remedies can be pursued if the Tribe fails to do so?
For the reasons set forth below, we conclude that Nebraska is preempted from imposing its cigarette tax on cigarettes manufactured and sold by the Tribe on its Reservation. Therefore, the Tribe may not be required to affix Nebraska cigarette tax stamps on packages of cigarettes sold by the Tribe on its Reservation. As we conclude that the Tribe may not be required to affix Nebraska cigarette tax stamps on cigarettes produced and sold on its Reservation, we need not address your second and third questions.
III. ANALYSIS
Generally, "[t]he federal purposes implicit in setting aside Indian country for the residence of a tribe — self-government and economic support — preempt state jurisdiction to tax Indians or Tribes therein, unless Congress authorizes the tax." F. Cohen,Handbook of Federal Indian Law, 406 (1982 ed.) [hereinafter "Cohen"]. "[W]hen a State attempts to levy a tax directly on an Indian tribe or its members inside Indian country, rather than on non-Indians, [the Court has] employed, instead of a balancing inquiry, `a more categorical approach: `[A]bsent cession of jurisdiction or other federal statutes permitting it', [the Court has] held, a State is without power to tax reservation lands and reservation Indians." Oklahoma Tax Comm'n v. Chickasaw Nation,515 U.S. 450, 458, 115 S.Ct. 2214, 2220-21 (1995) (quotingCounty of Yakima v. Confederated Tribes and Bands of YakimaNation, 502 U.S. 251, 258, 112 S.Ct. 683, 688 (1992) (citation omitted)). Applying this "categorical approach," the U.S. Supreme Court has "held unenforceable a number of state taxes whose legal incidence rested on a tribe or on tribal members inside Indian country." Oklahoma Tax Comm'n v. Chickasaw Nation,515 U.S. at 458, 115 S.Ct. at 2220. See, e.g., Bryan v. Itasca County,426 U.S. 373 (1976) (personal property tax); McClanahan v.Arizona State Tax Comm'n, 411 U.S. 164 (1973) (state net income tax).
"The initial and frequently dispositive issue in Indian tax cases, therefore, is who bears the legal incidence of the tax."Oklahoma Tax Comm'n v. Chickasaw Nation, 515 U.S. at 458,115 S.Ct. at 2220. "When the incidence is on the Indian party or on both parties, the tax is invalid under the rule that states lack taxing jurisdiction over Indians in tribal Indian country absent congressional consent." Cohen, at 413. "But if the legal incidence of the tax rests on non-Indians, no categorical bar prevents enforcement of the tax; if the balance of federal, state, and tribal interests favors the State, and federal law is not to the contrary, the State may impose its levy, . . ., and may place on a tribe or tribal members `minimal burdens' in collecting the toll." Oklahoma Tax Comm'n v. Chickasaw Nation,515 U.S. at 458, 115 S.Ct. at 2220 (citations omitted).
The legal incidence of Nebraska's cigarette tax is on the ultimate consumer. See Neb. Rev. Stat. § 77-2602.01 (1996) ("The impact of the [cigarette] tax . . . is hereby declared to be on the vendee, consumer, or possessor of cigarettes in this state,. . . ."). Thus, with respect to imposition of the tax on non-Indian purchasers or consumers, Nebraska's tax is not necessarily prohibited; rather, "a more particular analysis is required." Cohen, at 413.
The U.S. Supreme Court has noted "two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members." White Mountain ApacheTribe v. Bracker, 448 U.S. 136, 142 (1980). These barriers are the doctrines of federal preemption and tribal self-government. "[They] are independent because either, standing alone, can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members." Id. at 143. It is thus necessary to address whether Nebraska's cigarette tax is precluded by either of these two doctrines.
A. Federal Preemption.
In assessing whether a state tax or regulation of on-reservation activities is preempted, it is necessary to make "a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." White Mountain Apache Tribe v.Bracker, 448 U.S. at 145. "The question of whether federal law, which reflects related federal and tribal interests, preempts state activity is not controlled by the standards of preemption developed in other areas." Hoopa Valley Tribe v. Nevins,881 F.2d 657, 659 (9th Cir. 1989), cert. denied 494 U.S. 1055
(1990). "[A]mbiguities in federal law are, as a rule, resolved in favor of tribal independence." Cotton Petroleum Corp. v. NewMexico, 490 U.S. 163, 177 (1989). "State jurisdiction is preempted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority." New Mexico v.Mescalero Apache Tribe, 462 U.S. 324, 334 (1983). See alsoCotton Petroleum Corp. v. New Mexico, 490 U.S. at 176-77; RamahNavajo School Bd. v. New Mexico, 458 U.S. 832, 837-38 (1982). The Supreme Court has identified several factors to be considered in determining if a state tax on non-Indians is preempted, which "include the degree of federal regulation involved, the respective governmental interests of the tribes and states (both regulatory and revenue raising), and the provision of tribal or state services to the party the state seeks to tax." Cohen, at 413. The Court has also considered "whether the value being taxed is generated on the reservation or is attracted to the reservation solely by the claimed exemption from state taxes."Id. (citing Washington v. Confederated Tribes of ColvilleIndian Reservation, 447 U.S. 134, 155-57 (1980)).
The State's primary interest in enforcing the cigarette tax is to raise revenue for various governmental purposes. Twenty-one (21) cents of the thirty-four (34) cent tax on each package of cigarettes is dedicated to the State General Fund. Neb. Rev. Stat. § 77-2602(1) (1996). Varying amounts of the tax are deposited in other funds, including: the Nebraska Outdoor Recreation Development Cash Fund; the Department of Health and Human Services Finance and Support Cash Fund; the University Facilities Fund; the State College Facility Fund; the City of Omaha Public Events Facilities Fund; the Secure Youth Confinement Facility Fund; the Building Renewal Allocation Fund, the Nebraska Capital Construction Fund, and the Municipal Infrastructure Redevelopment Fund. Neb. Rev. Stat. §77-2602(1)(a) to (h). No part of the State's cigarette tax revenue is specifically allocated to regulation of the manufacture or sale of cigarettes or tobacco products. It can logically be assumed that some measure of state governmental services may be provided to nonmembers who purchase cigarettes manufactured by the Tribe. Attempting to quantify these services, however, is difficult, if not impossible. The State may also provide some services beneficial to the Tribe's manufacturing plant, such as highway access to and from the facility.
With respect to federal interests, numerous acts of Congress demonstrate "a firm federal policy of promoting tribal self-sufficiency and economic development." White Mountain ApacheTribe v. Bracker, 448 U.S. at 143. Indeed, the Court has recognized that the "intent and purpose of the [Indian] Reorganization Act [of 1934]," under which the Tribe is organized, "was `to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism.'" Mescalero Apache Tribev. Jones, 411 U.S. 145, 152 (1973) (quoting H.R. Rep. No. 1804, 73rd Cong., 2d Sess., 6 (1934)). The Tribe's production and sale of cigarettes on the Reservation will provide employment for tribal members, and income generated by these activities will be used to provide services to tribal members. The revenues generated from the Tribe's manufacture and sale of its own cigarettes will thus further the federal policy of fostering tribal self-sufficiency and economic development. In addition, the plant is located on land held by the United States in trust for the Tribe. There is insufficient factual information available to assess if any funds utilized by the Tribe to establish and maintain its cigarette manufacturing plant were obtained from the federal government.
As to analysis of the tribal interests, the Tribe has an obvious interest in that the manufacturing plant is a tribal enterprise. The plant is owned by the Tribe, and was established with tribal funds. The facility reportedly employs some tribal members, and the Tribe's goal is to eventually staff the entire operation with tribal members. Revenues generated by the manufacture and sale of the Tribe's cigarettes on the Reservation will allow the Tribe to provide needed services to its members on the Reservation. Nebraska's cigarette tax, if imposed on cigarettes manufactured and sold by the Tribe on its Reservation, would be based on value generated by the Tribe's activities on the Reservation.
Balancing the state, federal, and tribal interests presented in this case, we conclude that the State's interest in raising revenues from on-reservation sales to non-Indians of cigarettes manufactured by the Tribe is outweighed by the federal and tribal interests in promoting tribal self-sufficiency and economic development achieved by the employment of tribal members and generation of revenues for the funding of tribal governmental purposes. In reaching this conclusion, we believe the key factor tipping the balance in favor of preemption is the burden placed on the "value" generated by the Tribe's on-reservation activities if Nebraska's tax is imposed on cigarettes manufactured and sold by the Tribe on its Reservation.
On various occasions, state efforts to regulate or tax activities or transactions involving non-Indians on Indian reservations have been held to be preempted by federal law. See,e.g., California v. Cabazon Band of Mission Indians, 480 U.S. 202
(1987) (regulation of bingo games conducted on tribal reservations); White Mountain Apache Tribe v. Bracker,448 U.S. 136 (1980) (motor vehicle taxes imposed on non-Indian logging company contracting with tribe to sell, load, and transport timber on reservation); Hoopa Valley Tribe v. Nevins,881 F.2d 657 (9th Cir. 1989), cert. denied 494 U.S. 1055 (1990) (timber yield tax assessed against non-Indian purchasers of tribal timber); but see Cotton Petroleum Corp. v. New Mexico,490 U.S. 163 (1989) (upholding state taxation of oil and gas extraction by non-Indian company on reservation because of substantial state services to and interest in regulating the industry). "That a tribe plays an active role in generating activities of value on its reservation gives it a strong interest in maintaining those activities free from state interference. . . ." Gila RiverIndian Community v. Waddell, 967 F.2d 1404, 1410 (9th Cir. 1992);see also Washington v. Confederated Tribes of Colville IndianReservation, 447 U.S. 134, 156-57 (1980) (noting tribal interest in raising revenues for government programs "is strongest when the revenues are derived from value generated on the reservation by activities involving the Tribe[ ] . . .," while the state's interest in raising revenues is "strongest when the tax is directed at off-reservation value. . . .").
The significance of a tribe's role in activities creating "value" on its reservation in assessing if state taxation or regulation of conduct involving non-Indians is preempted is emphasized in the U.S. Supreme Court's decision in Californiav. Cabazon Band of Mission Indians, 480 U.S. 202 (1987). InCabazon, the Court rejected California's attempt to regulate bingo games conducted on the reservations of the Cabazon and Morongo Bands of Mission Indians. The Court noted that "the Tribes [were] not merely importing a product onto the reservations for immediate resale to non-Indians . . .," but "[were] generating value on the reservations through activities in which they have a substantial interest." 480 U.S. at 219-20.
The Court applied this same principle in New Mexico v.Mescalero Apache Tribe, 462 U.S. 324 (1983), in holding that New Mexico was preempted from enforcing its gaming laws against non-Indians engaging in hunting and fishing activities on the tribe's reservation. Rejecting New Mexico's claim that it could assert jurisdiction over non-Indians engaging in such activities on the reservation, the Court stated, in part:
 The assertion of concurrent jurisdiction by New Mexico not only would threaten to disrupt the federal and tribal regulatory scheme, but also would threaten Congress' overriding objective of encouraging tribal self-government and economic development. The Tribe has engaged in a concerted and sustained undertaking to develop and manage the reservation's wildlife and land resources specifically for the benefit of its members. The project generates funds for essential tribal services and provides employment for members who reside on the reservation. This case is thus far removed from those situations, such as on-reservation sales outlets which market to nonmembers goods not manufactured by the tribe or its members, in which the tribal contribution is de minimis. . . . The Tribal enterprise in this case clearly involves `value generated on the reservation by activities involving the Trib[e].'
462 U.S. at 341 (quoting Washington v. Confederated Tribes ofColville Indian Reservation, 447 U.S. 134, 156-57 (1980) (emphasis added).
In the present case, the Tribe's manufacture of cigarettes (or, perhaps, other tobacco products) involves the generation of value by the on-Reservation production of tribal goods. It is true that courts have generally applied the preemption doctrine to taxation of goods or products linked to a tribe's on-reservation resources. E.g. White Mountain Apache Tribe v.Bracker) (timber); Crow Tribe of Indians v. Montana, 819 F.2d 895
(9th Cir. 1987), aff'd 484 U.S. 997 (1988) (coal); NewMexico v. Mescalero Apache Tribe (hunting and fishing rights). While the Tribe is importing the materials necessary to produce its tobacco products, as opposed to harvesting an on-reservation resource, this does not alter the fact that the value of the products results from the expenditure of tribal resources. Thus, we believe that Nebraska may not tax the value created by the Tribe's on-Reservation manufacture and sale of its cigarettes.
We recognize that the U.S. Supreme Court, on several occasions, has upheld the imposition of state cigarette taxes on cigarettes sold to non-Indians by retailers located on tribal reservations. See Oklahoma Tax Comm'n v. Potawatomi IndianTribe, 498 U.S. 505 (1991); California State Bd. of Equal. v.Chemehuevei Indian Tribe, 474 U.S. 9 (1985); Washington v.Confederated Tribes of Colville Indian Reservation, 447 U.S. 134
(1980); Moe v. Confederated Salish and Kootenai Tribes,425 U.S. 463 (1976). Significantly, however, each of these cases involved state taxes on cigarettes purchased from non-reservation manufacturers and wholesalers and sold at tribal smokeshops; none of the cases involved cigarettes produced on the reservation by the tribe. The following passage from the Court's decision inColville recognizes the importance of this distinction:
 It is painfully apparent that the value marketed by the smokeshops to persons coming from outside is not generated on the reservations by activities in which the Tribes have a significant interest. . . . What the smokeshops offer these customers, and what is not available elsewhere, is solely an exemption from state taxation. . . . We do not believe that principles of federal Indian law, whether stated in terms of preemption, tribal sovereignty, or otherwise, authorize Indian tribes to market an exemption from taxation to persons who would normally do their business elsewhere.
447 U.S. at 155.
The Ninth Circuit, summarizing the reasoning employed by the Court in Colville and the other "tribal smokeshop" cases upholding state taxing power, stated:
 In Colville, . . . [t]he cigarettes sold by reservation stores to non-Indians [did] not incorporate materials produced on tribal land, nor [did] the tribes participate in any meaningful way in their design or manufacture. The tribes simply import[ed] the cigarettes onto the reservation, where they [were] sold to individuals who [took] them back off. The only value the tribes proffer[ed] to the general public [was] the value in not having to pay the state sales tax which would otherwise apply. Neither the federal government nor the Tribes have a legitimate interest, the Court concluded, in marketing this sort of tax loophole.
Gila River Indian Community v. Waddell,967 F.2d at 1409.[1]
A number of recent federal court decisions since Colville
recognize the issue of whether a state tax reaching on-reservation transactions involving non-Indians is preempted hinges largely on the Tribe's involvement in the activity giving rise to the tax. On three occasions, the Ninth Circuit has determined that the state's interest in imposing a tax reaching such transactions was sufficient to overcome a preemption claim.Salt River Pima-Maricopa Indian Community v. State of Arizona,50 F.3d 734 (9th Cir.), cert. denied ___ U.S. ___, 116 S.Ct. 186
(1995) (upholding state sales tax on non-Indian goods sold on reservation by non-Indian sellers to non-Indian buyers.); GilaRiver Indian Community v. Waddell, 91 F.3d 1232 (9th Cir. 1996) (upholding transaction privilege tax on sale of tickets and concessionary items in connection with sporting and entertainment events conducted on the reservation by non-Indian lessees.);Yavapai-Prescott Indian Tribe v. Scott, 117 F.3d 1107 (9th Cir. 1997), petition for cert. filed Prescott Convention Center, Inc.v. Scott, No. 97-788, 66 U.S.L.W. 3355 (U.S. Nov. 18, 1997) (upholding business transaction privilege tax on room rentals and food and beverage sales by non-Indian lessee of hotel located on reservation.).[2] In each case, the Ninth Circuit Court of Appeals noted the absence of significant tribal involvement in the production or provision of the goods and services subject to tax. Salt River Pima-Maricopa IndianCommunity v. State of Arizona, 50 F.3d at 738 (the tribe "contribute[d] relatively little to the value of the products and services sold. . . ."); Gila River Indian Community v. Waddell,91 F.3d at 1238 (finding the tribe's "assertions regarding its `active role in generating activities of value on the reservation' [were] unsupported by the record.");Yavapai-Prescott Indian Tribe v. Scott, 117 F.3d at 1112
(majority finding that, as to the sales tax, the tribe "contribute[d] virtually nothing to the food and beverage sales of the Hotel . . .," and, with respect to the room tax, that the tribe failed to carry its burden of proving "an active role" in contributing to the value of the hotel.).
Here, in contrast to these decisions, the cigarette manufacturing plant is owned and operated by the Tribe, employs tribal members, and is engaged in producing and selling goods on the Tribe's reservation. On balance, we believe these factors tip the scales in favor of finding that Nebraska's cigarette tax is preempted with regard to on-Reservation sales of cigarettes produced by the Tribe.
B. Tribal Self-Government.
In addition to preemption, "state regulatory authority over tribal reservations and members" may be invalidated if "it unlawfully infringe[s] `on the right of reservation Indians to make their own laws and be ruled by them.'" White MountainApache Tribe v. Bracker, 448 U.S. at 142 (quoting Williams v.Lee, 358 U.S. 217, 220 (1959)). "The self-government doctrine differs from the preemption analysis and is an independent barrier to state regulation." Crow Tribe of Indians v. Montana,819 F.2d 895, 902 (9th Cir.), aff'd 484 U.S. 997 (1988). Either is a "sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members."White Mountain Apache Tribe v. Bracker, 448 U.S. at 143. "Whether a state tax infringes on tribal sovereignty depends on the extent to which tribal self-government is affected."Gila River Indian Community v. Waddell, 91 F.3d at 1239.
We have determined that Nebraska's cigarette tax is preempted with regard to on-Reservation sales of cigarettes produced by the Tribe. Accordingly, it is not necessary for us to address whether the independent barrier to state taxation presented by the doctrine of tribal self-government would preclude application of Nebraska's cigarette tax.
IV. CONCLUSION
Based on the foregoing, we conclude that Nebraska is preempted from imposing its cigarette tax on cigarettes manufactured and sold by the Tribe on its Reservation. Therefore, the Tribe may not be required to affix Nebraska cigarette tax stamps on packages of cigarettes sold by the Tribe on its Reservation. We emphasize that our conclusion is limited to cigarettes manufactured and sold by the Tribe on its Reservation. If the Tribe were to sell its cigarettes outside the Reservation, Nebraska's cigarette tax would not be preempted.See Oklahoma Tax Comm'n v. Chickasaw Nation, 515 U.S. 450,463-64 (1995) (immunity of Indians and Indian tribes from state taxation "does not operate outside Indian country."). Also, Nebraska is not precluded from taxing cigarettes purchased by others from the Tribe and sold in Nebraska. As the Tribe is not required to stamp cigarettes sold on its Reservation, however, enforcement and collection of the tax in such a situation presents obvious problems. The Department may wish to consider seeking amendments to the cigarette tax statutes to ensure adequate enforcement and collection mechanisms exist to deal with this possible circumstance. If requested, we would be willing to discuss any potential legislative changes which could aid the Department in enforcing the Act.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
APPROVED BY:
Don Stenberg 
Attorney General
[1] In addition, the Court, in a recent case upholding state cigarette tax regulations imposing a quota system on exempt cigarettes and record keeping requirements on cigarette wholesalers doing business on Indian reservations, again referenced the language in Colville concerning the significance of on-reservation value being created by tribal activity, stating:
 The specific kind of state tax obligation that New York's regulations are designed to enforce — which falls on non-Indian purchasers of goods that are merely retailed on a reservation — stands on a markedly different footing from a tax imposed directly on Indian traders, on enrolled tribal members or tribal organizations, or on `value generated on the reservation by activities involving the Tribes,'. . . .
Department of Taxation and Finance v. Milhelm Attea Bros.,512 U.S. 61, 73, 114 S.Ct. 2028, 2035 (1994) (quoting Colville,447 U.S. at 156-57)).
[2] The decision in Yavapai was not unanimous. Two members of the panel upheld imposition of Arizona's taxes; the other member dissented. 117 F.3d at 1113 to 1117.